```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                          21 CR 221 (SHS)

5   SHEINA LEVIN,

6               Defendant.                  Plea
    ------------------------------x

7
                                           New York, N.Y.
8                                          March 9, 2023
                                           12:05 p.m.
9

10  Before:

11
                        HON. SIDNEY H. STEIN,
12
                                           District Judge
13
                            APPEARANCES
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  DAVID ABRAMOWICZ
         Assistant United States Attorney
17
    MICHAEL C. FARKAS
18       Attorney for Defendant

19  Also Present:
    Meherun Mayer, U.S. Pretrial Services
20

21

22

23

24

25
```

1          (Case called)

2          MR. ABRAMOWICZ:  Good afternoon, your Honor, David

3    Abramowicz for the government.

4          MR. FARKAS:  Good afternoon, your Honor, Michael

5    Farkas for Ms. Levin.

6          THE COURT:  Good afternoon.

7          I understand this is the first appearance of the

8    defendant, is that correct?

9          MR. ABRAMOWICZ:  It is, your Honor.

10          THE COURT:  Ms. Levin, if you would rise, please.

11          I wish to inform you, ma'am, that you have the right

12    to remain silent.

13          You understand that?

14          THE DEFENDANT:  Yes.

15          THE COURT:  You do not need to make any statement

16    whatsoever.  Even if you have already made any statement to the

17    law enforcement authorities, you do not have to make any

18    additional statement.  I will also wish to inform you that any

19    statements that you do make can be used against you.

20          Do you understand those rights?

21          THE DEFENDANT:  Yes, I do.

22          THE COURT:  You have the right to be represented by an

23    attorney today and at all other future proceedings in this

24    case, and if you are unable to afford an attorney, I will

25    appoint an attorney to represent you.

1                Do you understand those rights?

2                THE DEFENDANT:  Yes, I do.

3                THE COURT:  Have you retained an attorney?

4                THE DEFENDANT:  Yes, I have.

5                THE COURT:  Who is that?

6                THE DEFENDANT:  Michael Farkas.

7                THE COURT:  The parties want an arraignment separate

8     from the guilty plea.  Is that what the parties want at this

9     point?

10               MR. ABRAMOWICZ:  Yes, your Honor.

11               THE COURT:  I will do that.

12               MR. FARKAS:  Yes.

13               THE COURT:  Ms. Levin, have you received a copy of the

14    superseding information in this case, S2 21 CR 221?

15               THE DEFENDANT:  Yes, I have.

16               THE COURT:  Did you discuss it with Mr. Farkas?

17               THE DEFENDANT:  Yes, I have.

18               THE COURT:  Did he answer all of your questions about

19    that superseding information?

20               THE DEFENDANT:  Yes.

21               THE COURT:  You have the right to have me read that

22    superseding information right now in open court.  But if you

23    don't want me to, I won't.  You want me to read it or do you

24    waive my reading of it?

25               THE DEFENDANT:  Waive your reading of it.

1          THE COURT:  I accept that as a waiver of the right to

2    have the superseding information read.

3          Now, the parties apparently wish to have an

4    arraignment here before there is a plea.

5          How do you plead to the charges against you at this

6    point in that superseding information?

7          THE DEFENDANT:  Not guilty.

8          THE COURT:  I accept your plea of not guilty.  Thank

9    you.

10          I take it the parties are asking for an allocution on

11    the superseding information, is that correct?

12          MR. ABRAMOWICZ:  Yes, your Honor.  You mean a plea

13    proceeding?

14          THE COURT:  Yes.  I'm sorry.  I should have said that.

15    Plea proceedings rather than allocution.

16          Mr. Farkas, tell me what you want, sir.

17          MR. FARKAS:  Your Honor, the government and my client

18    have been in discussions for quite some time, and my client has

19    been proffered a plea agreement which she has signed and

20    accepted.  It would require her to plead guilty to Count One of

21    the superseding information, with various stipulations as to

22    guidelines ranges and other standard conditions that are

23    usually found in plea agreements.

24          THE COURT:  She has just entered a plea of not guilty.

25    I take it at this point you want her to withdraw -- you are

1    asking that she withdraw that plea and that I accept that

2    withdrawal and that she plead guilty.  Is that correct?

3         MR. FARKAS:  Correct, your Honor.  We are asking for a

4    change-of-plea proceeding.

5         THE COURT:  Let's proceed in that regard.  I think it

6    would have been a little easier just to proceeding directly to

7    this, but let's do it now.

8         Ms. Levin, if you would rise.

9         Ms. Blakely, if you would administer the oath.

10         I am going to put you under oath, Ms. Levin.

11         (Defendant sworn)

12         THE DEPUTY CLERK:  Please state your name and spell

13    your last name for the record.

14         THE DEFENDANT:  Sheina Levin, L-e-v-i-n.

15         THE COURT:  How old are you, Ms. Levin?

16         THE DEFENDANT:  Sixty.

17         THE COURT:  How far did you go in school?

18         THE DEFENDANT:  High school.

19         THE COURT:  Did you graduate from high school?

20         THE DEFENDANT:  I did.

21         THE COURT:  Are you able to read, write, speak, and

22    understand English?

23         THE DEFENDANT:  I am.

24         THE COURT:  Are you now or have you recently been

25    under the care of a doctor or a psychiatrist?

1          THE DEFENDANT:  I have.

2          THE COURT:  Recently?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Doctor or psychiatrist?

5          THE DEFENDANT:  Psychiatrist.

6          THE COURT:  For what purpose?

7          THE DEFENDANT:  Depression and anxiety.

8          THE COURT:  Have you ever been treated or hospitalized

9    for any mental illness or any type of addiction, including drug

10   or alcohol addiction?

11         THE DEFENDANT:  No, I have not.

12         THE COURT:  In the past 24 hours, have you taken any

13   drugs, medicine or pills or consumed any alcohol?

14         THE DEFENDANT:  Medicine.

15         THE COURT:  What's the medicine?

16         THE DEFENDANT:  Lexapro and Clonazepam.

17         THE COURT:  Is your mind clear today?

18         THE DEFENDANT:  Yes, it is.

19         THE COURT:  Are you feeling all right?

20         THE DEFENDANT:  Yes, I am.

21         THE COURT:  You have an attorney here?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  Who is that?

24         THE DEFENDANT:  Michael Farkas.

25         THE COURT:  Mr. Farkas, do you have any doubt as to

1    Ms. Levin's competence to plead at this time?

2              MR. FARKAS:  No doubt, your Honor.

3              THE COURT:  A moment ago Mr. Farkas told me you wish

4    to enter a plea of guilty to Count One of the superseding

5    information against you.  Is that true?  Do you wish to now

6    enter a plea of guilty.

7              THE DEFENDANT:  Yes, I do.

8              THE COURT:  Have you had a full opportunity to discuss

9    your case with Mr. Farkas and to discuss the consequences of

10   entering a plea of guilty today?

11             THE DEFENDANT:  Yes, I have.

12             THE COURT:  Are you satisfied with Mr. Farkas and his

13   representation of you?

14             THE DEFENDANT:  Yes.

15             THE COURT:  On the basis of Ms. Levin's responses to

16   my questions and my observations of her demeanor, she stands

17   here before me today, which is the first time in this

18   proceeding that I have seen her, I make the finding that she is

19   fully competent to enter an informed plea at this time.

20             Before I accept a plea from you, I am going to be

21   asking you certain questions, Ms. Levin.  My questions are

22   intended to satisfy me that you wish to plead guilty because

23   you are guilty and that you fully understand the consequences

24   of entering a plea of guilt today.

25             I am going to be describing to you certain rights you

1   have under the Constitution and laws of the United States.  You

2   are going to be giving up those rights if you enter a plea of

3   guilty.  So listen to me carefully.  If you do not understand

4   anything I am saying or describing to you, I want you to stop

5   me.  You can ask me anything you want.  You can ask Mr. Farkas

6   anything you want.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Under the Constitution and laws of the

10  United States, you have a right to speedy and public trial by a

11  jury on the charges against you, which are contained in

12  superseding information S2 21 CR 221.

13         Do you understand that?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT:  If there were a trial, you would be

16  presumed innocent and the government would be required to prove

17  you guilty by competent evidence and beyond a reasonable doubt.

18  You would not have to prove you were innocent at a trial.

19         Do you understand those rights?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  If there were a trial, a jury composed of

22  12 people selected from this district would have to agree

23  unanimously that you were guilty.

24         Do you understand those rights?

25         THE DEFENDANT:  Yes, I do.

1        THE COURT:  You have a right to be represented by an

2   attorney at trial and at every other stage of the proceedings.

3   And if you could not afford an attorney, one will be provided

4   to you at no cost to you.

5        Do you understand those rights?

6        THE DEFENDANT:  Yes, I do.

7        THE COURT:  If there were a trial, you would have a

8   right to see and hear all of the witnesses against you and your

9   attorney could cross-examine them.  You would have the right to

10  have your attorney object to the government's evidence and

11  offer evidence on your own behalf, if you so desired, and you

12  would have the right to have subpoenas issues or other

13  compulsory process used to compel witnesses to testify in your

14  own defense.

15       Do you understand all those rights?

16       THE DEFENDANT:  I do.

17       THE COURT:  If there were a trial, you would have the

18  right to testify if you wanted to, but no one could force you

19  to testify if you did not want to.  In addition, no inference

20  or suggestion of guilt could be drawn if you decided not to

21  testify at a trial.

22       Do you understand those rights?

23       THE DEFENDANT:  Yes, I do.

24       THE COURT:  You understand that by entering a plea of

25  guilty today, you are giving up each and every one of the

1     rights I have described, you are waiving them, and that there

2     will be no trial here?

3             THE DEFENDANT:  I do.

4             THE COURT:  You understand that you have the right to

5     change your mind right now and refuse to enter a plea of

6     guilty.  You don't have to enter a plea of guilty for any

7     reason whatsoever.

8             Do you understand that?

9             THE DEFENDANT:  I do.

10            THE COURT:  I asked you this before, but I am going to

11    ask you again.  Have you received a copy of the superseding

12    information in this case?

13            THE DEFENDANT:  Yes, I have.

14            THE COURT:  Did you read it?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Did you discuss it with Mr. Farkas?

17            THE DEFENDANT:  I did.

18            THE COURT:  A moment ago you waived my reading of it.

19    I am going to ask you the same question.  You have the right to

20    have me read that superseding information in open court right

21    now, but if you don't want me to read it, I won't.

22            What is your choice?

23            THE DEFENDANT:  Not to read it.

24            THE COURT:  I accept that.

25            Now, I said you are charged in this instrument, which

1    is a superseding information.  You understand that you have a

2    right under the Constitution of the United States to be charged

3    by an indictment, by a grand jury instead of by an information,

4    which is simply a charge by the government?

5              THE DEFENDANT:  Yes, I do.

6              THE COURT:  I have a document in front of me which I

7    am going to ask my deputy to mark as Government Exhibit 1.  It

8    says:  The above-named defendant, and you are the above named

9    defendant, Sheina Levin, who is accused of violating 18 U.S.C.

10   1349, being advised of the nature of the charge and of her

11   rights, hereby waives in open court prosecution by indictment

12   and consents that the proceeding may be by information instead

13   of by indictment.

14             I am going to ask my deputy to show you that document,

15   and I am going to ask you if that's your signature.

16             Is that your signature?

17             THE DEFENDANT:  Yes, it is.

18             THE COURT:  Do you understand you have waived the

19   right to be charged by an indictment and you have consented to

20   being charged by an information by the government instead of an

21   indictment by a grand jury?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Did you waive that right voluntarily and

24   knowingly?

25             THE DEFENDANT:  Yes.

1      THE COURT:  Do you understand that if you did not

2  plead guilty, the government would have to prove each and every

3  element of the charge in Count One beyond a reasonable doubt at

4  a trial.

5      THE DEFENDANT:  Yes.

6      THE COURT:  Mr. Abramowicz, set forth what the

7  elements are that the government would have to prove beyond a

8  reasonable doubt before a jury could convict this defendant.

9      MR. ABRAMOWICZ:  Your Honor, the conspiracy charged in

10  the information has two elements:  First, that the defendant

11  devised or participated in a scheme to defraud organization 1

12  of its right to the honest services of its president and CEO,

13  Victor Rivera, through bribery or kickbacks; second, that the

14  defendant devised or participated in that scheme knowingly and

15  with an intent to defraud.

16      I'm sorry, your Honor.  If I may start again.

17      THE COURT:  Yes.

18      MR. ABRAMOWICZ:  I was reading the elements of the

19  substantive offense.  I am going to have to do that again.

20      The conspiracy elements are:  First, that the

21  defendant and at least one person entered into a conspiracy to

22  commit honest services wire fraud; and, second, that the

23  defendant entered into that conspiracy knowingly and willfully.

24      That underlying honest services wire fraud has four

25  elements:  First, that the defendant devised or participated in

1   a scheme to defraud, in this case, organization 1, of its right

2   to the honest services of its president and CEO, Victor Rivera,

3   through bribery or kickbacks; second, that the defendant

4   devised or participated in that scheme knowingly and with an

5   intent to defraud; third, that the scheme or artifice to

6   defraud involved a material misrepresentation, false statement,

7   false pretense, or concealment of material fact; and, fourth,

8   that in advancing or furthering or carrying out the scheme to

9   defraud, the defendant transmitted or caused to be transmitted

10  the writings, signs, signal, picture, or sound alleged by means

11  of a wire communication in interstate commerce.

12          Your Honor, the government at a trial would also need

13  to prove by a preponderance of the evidence that venue in the

14  Southern District of New York is appropriate.

15          THE COURT:  You understand, with the exception of the

16  venue requirement, those are the elements the government would

17  have to prove beyond a reasonable doubt at trial?

18          THE DEFENDANT:  Yes.

19          THE COURT:  The venue requirement is simply a

20  requirement that the government has to prove at least one act

21  in connection with the conspiracy took place in the Southern

22  District of New York.  That has to be proven by the government

23  simply by a preponderance of the evidence rather than beyond a

24  reasonable doubt.

25          Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that the maximum

3    possible penalty of Count One, that is, the crime that you are

4    pleading guilty to, is 20 years in prison, plus the maximum

5    term of supervised release of three years, plus the maximum

6    fine of the greatest of $250,000, or twice the gross pecuniary

7    gain derived from the offense or twice the gross pecuniary loss

8    to individuals other than you resulting from the offense, plus

9    a $100 mandatory special assessment.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  I also must order restitution to anyone

13    injured as a result of your criminal conduct.

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  When I was reading what the maximum

17    penalty was, part of that was a maximum term of supervised

18    release of three years.  Supervised release means you are going

19    to be subject to monitoring upon your release from prison and

20    the monitoring will be under terms and conditions that could

21    lead to your reimprisonment without a jury trial for all or

22    part of the term of supervised release and without credit for

23    time previously served on postrelease supervision if you

24    violate any term or condition of supervised release.

25          Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  You understand that if I accept your

3     guilty plea and adjudge you guilty, that determination may

4     deprive you of such valuable rights as the right to vote, the

5     right to hold public office, the right to serve on a jury, and

6     the right to possess any kind of firearm.

7          THE DEFENDANT:  Yes.

8          THE COURT:  Government, I take it the defendant is a

9     United States citizen?

10          MR. ABRAMOWICZ:  Yes, your Honor.

11          THE COURT:  Ms. Levin, under current law, there are

12     sentencing guidelines that judges must use in applying the

13     factors set forth in Section 3553(a) to determine what an

14     appropriate sentence is in this case.

15          Have you talked to Mr. Farkas about the sentencing

16     guidelines?

17          THE DEFENDANT:  Yes, I have.

18          THE COURT:  Did he answer your questions about them?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand I won't be able to

21     determine what the relevant guideline range is until after I

22     receive a presentence report that's been completed by the

23     probation department and you and the government have had a

24     chance to challenge any of the facts reported by the probation

25     department?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, at some point the probation

3     department is going to interview you.  I want you to give them

4     accurate and complete information.  Mr. Farkas will have the

5     right to be there, if he wishes.  I am going to use that report

6     in determining what an appropriate guideline range is.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Do you understand that even after I

10    determine what the appropriate guideline range is in your case,

11    I have the ability to impose a sentence based on a departure of

12    the guidelines.  In other words, I can sentence you to

13    something higher than that called for by the guidelines or I

14    can sentence you to something lower than that called for by the

15    guidelines on the basis of the departure.

16         Do you understand that?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  Even after I determine that, that is,

19    whether there are grounds to depart either upward or downward

20    on the basis of the departure, I then must apply all of the

21    factors in 18 U.S.C. Section 3553(a) to determine what a fair

22    and reasonable and appropriate sentence is and one that's

23    sufficient but not greater than necessary to meet the ends of

24    the criminal justice system.

25         Do you understand that process of sentencing?

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Do you understand that when you are

3    sentenced to prison or if you are sentenced to prison, the

4    system of parole that used to exist in the federal criminal

5    justice system no longer exists.  Parole has been abolished.

6    When I sentence you to a certain number of months in prison,

7    you will serve those months in prison.  You will not be

8    released any earlier on parole.

9              Do you understand that?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  You understand that if Mr. Farkas or

12   anyone else has tried to tell you what your sentence shall be

13   or will be or could be or may be, and that includes the

14   government, for that matter, all of those prognostications or

15   assumptions or suggestions could be wrong.

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  That's because I'm the one who is going to

19   sentence you, and I have no idea what your sentence is going to

20   be because I don't know enough about you, and indeed this is

21   the first time I've seen you.  I don't know enough about your

22   upbringing, your finances, your history, whether you have any

23   criminal history, your family circumstances.  I know something

24   about this crime because Mr. Rivera has been convicted here,

25   but I need to know more.  I need to know specifically what you

1    did, what you admit you did.  Since I don't know enough about

2    you to know what your sentence is going to be, and I'm the one

3    who is going to sentence you, Ms. Levin, nobody can know what

4    your sentence is going to be.

5             Do you understand that?

6             THE DEFENDANT:  Yes, I do.

7             THE COURT:  If you are sentenced to something that you

8    are not expecting or sentenced to something that is different

9    than what somebody told you your sentence was going to be, you

10   still are going to be bound to this guilty plea and you won't

11   be allowed to withdraw it.

12            Do you understand that?

13            THE DEFENDANT:  Yes, I do.

14            THE COURT:  I have a document in front of me.  It's

15   dated January 17.  It's to Mr. Farkas, six pages long.  It's

16   signed by Mr. Abramowicz.  I am going to refer to it as the

17   plea agreement.  I am going to ask my deputy to mark it as

18   Government Exhibit 2.  I am going to ask her to show you the

19   last page.

20            Is that your signature on the last page?

21            THE DEFENDANT:  Yes, it is.

22            THE COURT:  Did you read that agreement before you

23   signed it?

24            THE DEFENDANT:  Yes, I did.

25            THE COURT:  Did you discuss it with Mr. Farkas before

1   you signed it?

2          THE DEFENDANT:  Yes, I did.

3          THE COURT:  Did you understand it at the time you

4   signed it?

5          THE DEFENDANT:  Yes, I did.

6          THE COURT:  Does that letter agreement, Government

7   Exhibit Number 2, constitute your complete and total

8   understanding of the entire agreement between the government,

9   Mr. Farkas, and yourself?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Is everything about your plea and sentence

12   contained in that agreement?

13          THE DEFENDANT:  I believe so.

14          THE COURT:  Are there any side deals I should know

15   about, anything that's been left out of that agreement that I

16   need to know about?

17          THE DEFENDANT:  No.

18          THE COURT:  Is everything about your plea and sentence

19   contained in that agreement that you are aware of?

20          THE DEFENDANT:  Yes, that I'm aware of.

21          THE COURT:  Has anyone offered you any inducements or

22   threatened you or forced you to plead guilty or to enter into

23   the plea agreement?

24          THE DEFENDANT:  No.

25          THE COURT:  Do you understand that in this plea

1  agreement you have admitted the forfeiture allegation, and you

2  have agreed to forfeit to the United States $790,835.06, which

3  represents the proceeds traceable to the commission of the

4  offense to which you have pled.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you also understand that in this

8  agreement you have agreed to make restitution to the Bronx

9  Parent Housing Network, Inc. in the amount of $838,880.78.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that in this agreement

13 you have waived the right to appeal the sentence and you have

14 waived the right to bring a collateral attack to the sentence

15 if I sentence you to 37 months in prison or fewer months?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you have any questions for me about

18 that?

19          THE DEFENDANT:  No.

20          THE COURT:  Do you understand that you have waived any

21 defense based on the statute of limitations?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Mr. Farkas, do you know of any valid

24 defense that would prevail at trial or know of any reason why

25 Ms. Levin should not be permitted to plead guilty?

1        MR. FARKAS:  I do not, your Honor.

2        THE COURT:  In your view, sir, is there an adequate

3    factual basis to support your client's plea?

4        MR. FARKAS:  Yes.

5        THE COURT:  In the view of the government, is there an

6    adequate factual basis to support Ms. Levin's plea?

7        MR. ABRAMOWICZ:  There is, your Honor.

8        THE COURT:  Ms. Levin, tell me what you did in

9    connection with Count One of superseding information S2 21 CR

10   221.

11       MR. FARKAS:  Your Honor, with my assistance, Ms. Levin

12   has drafted a statement in this regard.  May she sit and be

13   able to read it into the microphone?

14       THE COURT:  Yes.

15       What I do need to know, though, is that everything you

16   are about to tell me is true.  Is it?

17       THE DEFENDANT:  Yes.

18       THE COURT:  You may be seated.  When people read, they

19   tend to speed up.  When they are nervous, they tend to speed

20   up.  So I am going to ask you to read it slowly and clearly so

21   I can understand what you are admitting to and the court

22   reporter can take it down for the record.

23       THE DEFENDANT:  Thank you, your Honor.

24       I am a real estate broker operating my own business.

25   Some time ago I met Victor Rivera, who was then president and

1    CEO of a not-for-profit organization called Bronx Parent

2    Housing Network, or BPHN, which is located in the Southern

3    District of New York.

4        Mr. Rivera and I arranged for BPHN to sublease

5    properties from my company in order to facilitate BPHN's

6    housing of homeless persons within those properties.

7    Mr. Rivera knew that I would make a profit on these

8    arrangements due to my direct lease agreements with the owners

9    of those properties.

10        When our subleases with BPHN were being arranged,

11    Mr. Rivera demanded that he personally receive a cut of my

12    company's profits, stating that he was responsible for the

13    company getting BPHN's subleases.

14        As a result, from about May 2019 through January 2021,

15    I paid a portion of my company's profits to Mr. Rivera

16    indirectly.  I did this by sending U.S. currency at his

17    direction to an entity that he controlled but was not listed in

18    his name, so that Mr. Rivera could hide those payments from

19    BPHN.  I knew that by doing so -- I knew that doing so would

20    enable the subleases to go forward and that these payments were

21    improper.

22        THE COURT:  What years did you do these things?

23        THE DEFENDANT:  From 2019 -- May 2019 to approximately

24    January 2021.

25        THE COURT:  What borough were you in when you did

1    these, when you gave this currency?  What county were you in?

2              THE DEFENDANT:  Brooklyn.

3              THE COURT:  Was BPHN Mr. Rivera's entity in Manhattan,

4    if you know?

5              THE DEFENDANT:  They are in the Bronx.

6              THE COURT:  They are in the Bronx.  Thank you.

7              Government, anything else on the factual allocution?

8              MR. ABRAMOWICZ:  Your Honor, I would like to just

9    proffer some evidence for the interstate wire element.

10             The government can proffer that it has evidence that

11   Ms. Levin and Mr. Rivera communicated by email in furtherance

12   of the scheme and that some of those communications were sent

13   or received in the Southern District of New York and traveled

14   through Google servers located outside New York State.

15             THE COURT:  Do you accept that proffer, Mr. Farkas?

16             MR. FARKAS:  I do, your Honor.  Thank you.

17             THE COURT:  Ms. Levin, when you did the acts you just

18   told me about, did you know that what you were doing was wrong

19   and illegal?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Government, tell me what evidence you have

22   here.

23             MR. ABRAMOWICZ:  Yes, your Honor.

24             At a trial, the evidence against the defendant would

25   include financial records showing Ms. Levin's payments to

1   Victor Rivera through entities that Mr. Rivera controlled.  The

2   evidence would also include the defendant's statements captured

3   on consensually recorded phone calls discussing payment

4   arrangements.

5             THE COURT:  Ms. Levin, how do you now plead to the

6   charge in Count One of superseding information S2 21 CR 221,

7   guilty or not guilty?

8             THE DEFENDANT:  Guilty.

9             THE COURT:  Are you pleading guilty because you are

10  guilty?

11            THE DEFENDANT:  Yes.

12            THE COURT:  You are pleading guilty voluntarily and of

13  your own free will?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Mr. Farkas, anything else on the factual

16  allocution?

17            MR. FARKAS:  No, your Honor.  I appreciate the Court's

18  patience with the factual presentation in the allocution.

19            THE COURT:  Government, anything else?

20            MR. ABRAMOWICZ:  Not on the plea, your Honor.

21            THE COURT:  Because you acknowledge you are guilty as

22  charged, because I find you know your rights and are waiving

23  them knowingly and voluntarily, because I find your plea is

24  entered knowingly and voluntarily and is supported by an

25  independent basis in fact containing each of the essential

1   elements of the offense, I accept your guilty plea and I

2   determine you to be guilty of the offense to which you have

3   pled.

4        I have in front of me a consent preliminary order of

5   forfeiture in the sum of $790,835.06, and I am signing that

6   consent preliminary order of forfeiture money judgment.

7        Date for sentencing is set as June 28 at 2:30 p.m.

8        MR. FARKAS:  One moment, your Honor, please.

9        Your Honor, would you prefer that we try to set a date

10   right now that I can verify with the government will work for

11   both of us, or do you prefer that we contact chambers --

12        THE COURT:  I thought I just said it, June 28.  Is

13   there any issue with June 28?

14        MR. FARKAS:  I may be traveling that week, your Honor.

15        THE COURT:  Let's do it when you are not traveling.

16        MR. FARKAS:  I believe that I should be back the week

17   of July 10.

18        THE COURT:  July 12, 2:30 p.m.

19        Is there any application with regard to bail?

20        MR. ABRAMOWICZ:  Yes, your Honor.  The parties have

21   agreed upon and proposed conditions of the defendant's release,

22   and I can recite those to you.

23        We propose that the defendant be required to surrender

24   her passport, which she has done, and that she be released on a

25   $100,000 personal recognizance bond with her travel restricted

1     to the Southern, Eastern, and Northern Districts of New York,

2     the Southern District of Florida, and the District of

3     Connecticut, with additional temporary travel as approved by

4     pretrial services and the government, and that she be subject

5     to pretrial services' supervision as directed.

6              In the pretrial report there is also a proposal that

7     she not contact any codefendants, victims, or witnesses unless

8     in the presence of counsel.  We would consent to that, except

9     we would just take out witnesses, just to enable her to

10    communicate with family members who may be witnesses.  And

11    there is also.

12             THE COURT:  Just a moment.

13             What are you asking for in regard to no contact with

14    codefendant's victims or witnesses, unless in the presence of

15    counsel?  What are you asking?

16             MR. ABRAMOWICZ:  We would just ask to remove

17    witnesses, only because there are some family members who may

18    technically be witnesses.

19             THE COURT:  Fine.  It will be no contact with

20    codefendant or victims, unless in the presence of counsel.

21             MR. ABRAMOWICZ:  The government has no objection to

22    the fifth proposed condition from pretrial, which is the mental

23    health evaluation and treatment as directed.

24             THE COURT:  That's a joint proposal?

25             MR. FARKAS:  Yes, your Honor.

1          MR. ABRAMOWICZ:  Your Honor, if I could just note just

2  for the record that Ms. Levin did surrender voluntarily this

3  morning at 9 a.m.

4          THE COURT:  Is she surrendering her passport?

5          MR. ABRAMOWICZ:  Yes.  It has been handed over to law

6  enforcement agents.

7          THE COURT:  I'll approve that bail package.

8          Anything else, government?

9          MR. ABRAMOWICZ:  Nothing from the government, your

10  Honor.

11          THE COURT:  Defense.

12          MR. FARKAS:  No, sir.  Thank you.

13          THE COURT:  I'll see everybody on the date of

14  sentencing or any adjourned date that I then set.

15          Thank you, Ms. Levin.

16          (Adjourned)

17

18

19

20

21

22

23

24

25