# EXHIBIT A



THE ALEPH INSTITUTE

NATIONAL HEADQUARTERS
9540 Collins Avenue, Surfside, FL 33154
Phone: (305) 864-5553

WEST COAST BRANCH
4221 Wilshire Blvd, #170-6
Los Angeles, CA 90010
Phone: (424) 210-3685
www.aleph-institute.org

**Rabbi Yossi Bryski**
ybryski@aleph-institute.org

**Chairperson / Founder**

Rabbi Sholom D. Lipskar

**President**

Lloyd S. Rubin

**Board of Directors**

Robert Danial

Boruch Duchman

Joy Fishman

Stephen Fiske

Russel Galbut

Reuven Herssein

Daniel M. Holtz

Alberto Kamhazi

Sonny Kahn

Rabbi Aaron Lipskar

Rabbi Sholom D. Lipskar

Morris Mendal

Lloyd S. Rubin

Eric Stein

Sylvia Urlich

**Executive Director**

Rabbi Aaron Lipskar

**Director of Operations**

Moshe N. Barouk

**Director of Outreach Programs**

Rabbi Menachem M. Katz

**Director of Military Programs**

Rabbi Sanford L. Dresin

**Director of Advocacy**

Rabbi Zvi Boyarsky

**Director of Outreach Programs**

Rabbi Shua Brook

**Chief Financial Officer**

Yosie Lipskar

September 7, 2023

The Honorable Sidney H. Stein
Senior United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:          ***United States v. Sheina Levin***
             Case No. 21-CR-221-02 (SHS)

Dear Judge Stein:

I write on behalf of the Aleph Institute ("Aleph"), with respect and deference to the Court, regarding the sentencing of Sheina Levin ("Sheina"). We wish to share our sentencing proposal that, we humbly submit, would further the goals of sentencing in achieving optimal results for Sheina and for society. We are grateful for your consideration of this submission.

We genuinely hope and pray that we may be of service to the Court by providing the following meaningful alternative to incarceration for your consideration. ***We recommend that the Court consider a sentence for Sheina consisting of a term of probation, together with a program of community service, spiritual counseling, psychotherapy, and marriage and family therapy, in lieu of incarceration.*** We believe that incarceration would not provide any meaningful benefit to Sheina or to society. In contrast, our proposed plan would be rehabilitative to Sheina and beneficial to the community at large. We are hopeful that you will find that our presentation effectively addresses the compelling facts and circumstances specific to this case, and

THE ALEPH INSTITUTE

we are available to provide any additional input that may assist you in your sentencing decision.

## I.      THE ALEPH INSTITUTE

The Aleph Institute ("Aleph") was formed in 1981 at the direction of The Lubavitcher Rebbe, Rabbi Menachem M. Schneerson, *may his merit shield us,* to provide support and rehabilitation to individuals enmeshed in the criminal justice and penal systems.[1] Aleph became a reality during a meeting between Rabbi Sholom D. Lipskar and the Honorable late Jack Weinstein of the U.S. District Court for the Eastern District of New York. Judge Weinstein wrote the following about Aleph: ***"[T]he Aleph Institute, and [its] associates understand and force us to face the fact that each person deserves to be treated with respect as an individual personality and not as . . . a faceless number.***"[2] Judge Weinstein continued, "[Aleph's] assistance to defendants and their families provide standards of compassion and aid worthy of emulation . . . As a result of its good work, Aleph is widely known and respected by penal and judicial authorities."

Aleph's work in the realm of criminal sentencing has been devoted to the development of effective alternative sentencing options. Our many years of experience have taught us that, in certain cases, the goals of the criminal justice system can be accomplished by alternative means, without compromising the need to promote criminal justice goals such as rehabilitation, retribution, deterrence, and incapacitation.  We work closely with courts, federal and state lawmakers, law professors, and penal experts towards our common goal of achieving outcomes that promote justice, lessen the burden on shared penal resources, reduce recidivism, and benefit offenders, together with their families and communities. We take seriously our mission, which former FBI director and retired U.S. District Judge, the Hon. Louis Freeh, eloquently summarized as "championing and delivering justice to people who have been overlooked or forgotten by the rule of law, giving them hope, relief from suffering and the chance to improve their lives and fortunes." We are further guided by our ethical teachings which emphasize that every individual – no matter his shortcomings – naturally has a positive purpose to fulfill in the world.

Since its formation, Aleph has submitted alternative sentencing recommendations in hundreds of criminal cases (federal and state) throughout the United States. We advocate for alternative sentences for individuals in whom we detect a deep sincerity

---

[1] www.aleph-institute.org; *see, also*, Appendix: The Aleph Institute, attached hereto.
[2] Hon. Jack B. Weinstein, Prison Need Not Be Mandatory: There Are Options Under the New U.S. Sentencing Guidelines, 1 JUDGE J. 16, 28 (1989).

THE ALEPH INSTITUTE

and a genuine willingness to make positive changes in their lives. Further, we only advocate on behalf of individuals who have passed our rigorous screening process, and we do not advocate for any individual unless we are confident that they do not pose a future threat to society. **We provide our services on a pro bono basis, motivated only by our sincere belief in the work that we do.**

We readily acknowledge that prison terms are often necessary as appropriate punishment for serious offenses and/or to protect the public from violent, predatory, or unrepentant offenders. Still, courts have observed that **"[i]ncapacitory sentences are usually unnecessary to increase public safety, or prevent recidivism; they place a tremendous financial burden on society through excessive incarceration."**[3]  In our experience, lengthy periods of incarceration inhibit defendants from fulfilling their potential, and devastate the family and community left behind, breeding bitterness, anger, insensitivity, and eventual recidivism. Too many defendants "lose their claim to a future" when "lengthy prison terms" are substituted for "reasonable, innovative, and promising alternatives to incarceration."[4] We find that our sentencing philosophy is given excellent expression in these words from William Fitzpatrick, the former President of the National District Attorneys Association, who suggests that **"that we use prison for those we are afraid of, not those whom we are mad at based on their behavior."**[5]

## II.   SHEINA LEVIN

### A.   Family Background - Pain and Sacrifice

Sheina and her husband Mendel, as Jews of Eastern European origin, have a history of trauma that has been passed down from prior generations as a result of the horrific antisemitism they suffered. Many of Sheina's extended family members were torn from their homes, dehumanized, and murdered during the Holocaust. This trauma manifests in a variety of symptoms, including increased vulnerability to stress, anxiety, erratic mood, unhealthy interpersonal functioning, and cognitive dysfunction. Also, in the Hasidic (Orthodox) Jewish community in which Sheina was raised, psychological issues are rarely discussed or treated, further exacerbating their harmful consequences.

Sheina's father, Gavriel, was born in Russia in approximately 1932. Growing up in such a hostile environment, Gavriel was forever impacted by the horrors he experienced. Sheina writes that her father was "traumatized" by his childhood, and

---

[3] *United States v. Rivera*, 281 F. Supp. 3d 269, 271 (E.D.N.Y. 2017).
[4] *United States v. Dossie*, 851 F. Supp. 2d 478, 478 (E.D.N.Y. 2012) (internal quotation omitted).
[5] April 26, 2016, letter to Senators Mitch McConnell and Harry Reid.



THE ALEPH INSTITUTE

"lacked the ability to contend with [his] psychological issues." After experiencing the overwhelming challenges that he and his family had overcome, Gavriel wanted to live a "risk-averse life." At times, Gavriel could be the most loving and caring father. Yet, in the face of certain stressors, he would lash out. Sheina recalls one incident during her childhood when her father slapped her across her face when she returned home cold and wet after playing in the snow. Sheina's father was upset that Sheina had "placed herself at risk." Such occurrences were emotionally damaging for Sheina, as she writes, "I was in awe of my father who was a gentle man and a loving man so when he slapped me it was traumatic and something I will never forget."

Like her own father, Sheina's husband Mendel also experienced profound psychological trauma during his childhood. In his adulthood, this trauma manifests in Mendel's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Sheina currently receives psychotherapy, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ For many years, Sheina has sacrificed her own happiness for her idealized impression of a close, traditional Jewish family. As further detailed below, she has also lived an extraordinary life of service to her community and family, in addition to becoming an inspirational businesswoman in a community where such accomplishments for women are rare.

**B.    A Life of Good Deeds**

      1.    A Pillar of her Community

Since she was a young girl, Sheina has always been sensitive to the plight of the less fortunate, and has been committed to helping others. As a teenager, she spent her Saturday afternoons visiting the Hospital of Chronic Diseases. She befriended the residents there, many of whom did not have much time left to live, consistently spreading cheer and building relationships with them. This commitment has continued throughout Sheina's adult life. She is always eager to help support her community, and she keeps her home open not only to her family, but also to members of her

THE ALEPH INSTITUTE

community in need. In her tight knit community, Sheina's home serves as a hub of activity, where joyous life-cycle events happen very often. Engagement parties, Bar and Bat Mitzvahs, graduations - Sheina finds so much joy and gratitude in celebrating these happy occasions at her home - she takes these celebrations personally, treating everyone as if they were her own family.

For many years, Sheina and her adult daughters have hosted a women's Torah class every Tuesday night. Each week, Sheina prepares dinner for 20-25 women who are studying in New York from overseas, providing them with a "home away from home." For six years, twice a week, Sheina prepared dinners for a family that was struggling financially. This task was particularly challenging as one of the children had Crohn's disease (as does one of Sheina's own daughters), which required very specific dietary restrictions. No formal invite is ever required to attend Sheina's Sabbath meals – her doors are always open – and a typical Sabbath meal at Sheina's home is full of people from all walks of life.

Sheina has a large extended family, and she actively seeks out any nieces, nephews or other relatives who are struggling. Without hesitation, Sheina invites them into her home for as long as they need, housing them, feeding them, nurturing them, and providing them the support they need to get back on their feet. One of Sheina's nephews was born with a rare heart condition that, in most cases, tragically causes death within a year of birth. Miraculously, this child survived to his teenage years, but had developed debilitating anxiety. Sheina took him into her home for several years, spending countless hours doing breathing work with him, practicing his therapy, and walking him through his panic disorder with so much love and patience. Now, as a functioning young adult, this young man credits his Aunt Sheina for keeping him alive.

Soon after losing his wife to cancer, a grieving husband and his two young children were evicted from their apartment. Sheina welcomed them into her vacant basement apartment, and helped the father secure employment. Sheina became a mother figure for these two young children, showering them with unconditional love, and giving them the stability they needed. These two children are happily married today with families of their own, and they still maintain a strong bond with Sheina.

Sheina's unquestioning openness, care, and generosity can sometimes be to her own detriment, as her daughter Yehudis explains, "it's very important for my mother to see the best in people despite their worst qualities, believe that they have good intentions, and that was perhaps her downfall. My mother opens her arms and lets everyone in."[6]

---

[6] Letter from Yehudis Levin.

5

THE ALEPH INSTITUTE

Sheina's daughter Rosi echoes Yehudis' sentiment, writing that "my mother is a victim of domestic abuse and in order to function my mother needed blinders to keep moving . . . she had to be laser focused and maybe at times moved with blinders trusting people always seeing the best in people ultimately to her detriment."[7]

Sheina's dedication to helping those in need has carried on in her professional life, where she has made the housing of vulnerable populations the focus of her life's work. She began her career working to house individuals infected with AIDS, who a few decades ago confronted tremendous obstacles in finding housing. In the years that followed, Sheina worked with non-profit organizations and New York City to house populations with physical and mental disabilities, substance abuse addiction, low-income families, and victims of domestic violence.  She is well known in her field for championing these causes and foregoing traditionally lucrative development work, so that she can truly continue to be of service. Through these efforts she has also worked with many community organizations over the years on service projects for the benefit of these populations.

> 2.    A Supportive Mother and Daughter

Sheina's daughter, Emmett, has struggled since her adolescence. She suffers from ███████████ and remains financially dependent on Sheina. When Emmett came out as transgender at age 15, Sheina never judged her or made her feel inadequate. She took the time to listen to her and feel the deep pain and turmoil her daughter was experiencing. When her daughter came to the conclusion that her pain was not being caused by her gender identity, Sheina also supported her. Emmet writes, "my mother has an unwavering belief in those she loves. She accepts everyone by nature and listens to them . . . When I had no place in the world my mother convinced me that I mattered as I struggled to find my identity."[8] The mother-daughter bond they share is now stronger than ever and unwavering.

In 2013 Sheina's son Dovid developed a terrifying opioid addiction. Dovid was in and out of rehab, and there were many times that Sheina thought she might lose her beloved son. Clean and sober for many years, Dovid is now the loving father of five beautiful children.  Dovid writes, "I know I caused my mother a lot of stressful years because of my addiction, though I also know that I would not be alive today without her nonjudgmental love and understanding. She saved my life and I love her for never

---

[7] Letter from Rosi Levin.
[8] Letter from Emmet Levin.

THE ALEPH INSTITUTE

giving up on me."[9] Sheina is a devoted participant in the Al-Anon 12-step program, so she can continue to support Dovid through his life altering journey.

Sheina's parents are both in their 90s, and as their only daughter who lives nearby, Sheina is responsible for all their medical appointments and care. She is an enormous part of their lives, visiting them and cooking for them several times a week. She has a unique way of taking care of their needs without compromising their independence. Sheina's friend (and relative) Naomi Branover writes that Sheina is a "strong pillar of support" for her elderly parents, and that her "dedication and care" for them is "irreplaceable."[10] Sheina explains, "my parents are old and fragile and it is my religious duty to provide for their needs and this is a Jewish commandment that I cannot abandon."

### 3.   A Devoted Friend

Since the onset of this case, we have experienced an outpouring of support for Sheina by so many friends and family, many of whom recount how she helped them through difficult times.  For example, Sheina's friend Judy was on the brink of divorce due to her husband's drug addiction. Judy describes how she had given up on her marriage, but Sheina would not allow it. Sheina convinced Judy that there was light and hope at the end of the very dark tunnel, and she was consistently present in Judy's life to guide and encourage her to keep her marriage together. Having years of experience struggling with her own son's addiction (and successfully overcoming it), Sheina was relentless in helping Judy ensure that her husband received the proper therapy and treatment he needed to recover. After a few relapses, Judy's husband overcame his addiction. Judy is grateful to Sheina for being incredibly persistent and supportive when her life hit rock bottom, stating that "Sheina is someone who I trust deeply. She interacts with people with complete respect and dignity because she is a very dignified person. She is generous with her time and love and does her very best to see the positive in every person and every situation."

## C.   **Remorse and Personal Growth**

Sheina feels constant and profound remorse because of her actions, and she is committed to personal growth and transformation. Her son Zvi writes, "my mother takes full responsibility for what occurred," and "she is profoundly sorry."[11] In our many meetings, she has expressed total contrition for her role in the offense, fully

---

[9] Letter from Dovid Levin.
[10] Letter from Naomi Branover.
[11] Letter from Zvi Levin.

THE ALEPH INSTITUTE

admitting her wrongful conduct without denying or omitting relevant information. Sheina's deep sense of regret is evident to all those around her, including Ezzie Schaffran, Sheina's friend for nearly 25 years, who writes, "I see how remorseful she truly is and her willingness to speak to the community about following not only the letter of the law but also the spirit."[12]

Sheina has been providing deterrence talks, which lay out in detail her journey of personal and professional growth. During these talks, Sheina publicly takes responsibility for her failings, and promotes the message of vigilantly avoiding any business practices that are illegal or unethical. One attendant of Sheina's presentation describes how she was "deeply impacted by [Sheina's] message. It is clear to me that Sheina is a kind, loving, and upstanding woman who feels remorse and shame and has deep commitment and resolve to make things better."[13] These talks not only support Sheina's rehabilitation through her uncompromising honesty and disclosure, but also serve to deter others from engaging in wrongful conduct.

A deeply spiritual person, Sheina has used her challenges as a source of introspection and improvement. She writes, "This is a challenge. Thank you, God . . . I will grow through this. I am learning something new every day . . . So many emotions are running through me." Her spirituality and connection to God have grown:

> "As I write this I am taking a deep breath, closing my eyes, and connecting to my Higher Power . . . knowing that each and every challenge, failure, mistake, poor judgment, and especially a crime gives me the opportunity to change and grow. To learn to utilize better judgment, to learn to shut out and walk away from poor choices. Having more clarity on what is okay and what is not.  What can I do tomorrow that I did not do today? How can I utilize my strengths for good today more than yesterday?"

These words are not hollow – they ring true through Sheina's recommitment to and immersion in the good works she continues to perform.

**D.    Alternative Sentencing**

1.    Sheina is a Strong Candidate for Alternative Sentencing

Through our work with Sheina, as well as with her family and friends, we have had an opportunity to understand her as a complete person, separate and apart from her

---

[12] Letter from Ezzie Schaffran.
[13] Letter from Edith Schottenstein.

THE ALEPH INSTITUTE

criminal conduct, and we have seen all the good of which she is capable. We are aware of the nature and circumstances of her offenses, and we acknowledge that her actions were inexcusable. We have counseled her as she faced all the challenges resulting from her conduct and we have supported her as she engaged in efforts to learn and grow from her experiences. We have consulted with Sheina's attorney and her family in an effort to understand how she may best move forward and repay her debt to society.

Sheina has already begun to use the incredibly painful experience initiated by her criminal conduct to better herself, as well as to help others.  We believe that she is already having a positive impact on others, but the impact on her own psyche has been even greater.  She has begun to internalize why her conduct was so wrong and how she can use the insights she has gained to help others and to become a better person.

In our interactions with Sheina, we see that she is learning and listening, and we believe that she, her family, and her community, would be better served by a sentence consisting of probation, together with a program of community service, spiritual counseling, psychotherapy, and marriage and family therapy, in lieu of incarceration. Our alternative sentencing proposal would allow Sheina to continue on this path of growth, while also allowing her to continue to enormously benefit society.

2.     <u>Alternative Sentencing Proposal</u>

As an organization motivated by the universal truths of moral and ethical behavior laid forth in Jewish law, we respectfully suggest that the following proposal, in conjunction with a period of probation, would be an appropriate sentence for this offense in lieu of incarceration. We have designed Sheina's proposed alternative sentence to be rehabilitative and intensive. Aleph can closely monitor Sheina's compliance with the proposed program of community service and spiritual counseling. She would be required to satisfy weekly and monthly performance goals. Aleph, in turn, would provide regular and detailed progress reports to U.S. Probation.

a.     <u>Community Service</u>

i.     <u>The Urban Outreach Center</u>

The Urban Outreach Center ("UOC") provides food, clothing, hygiene products, and showers to low-income New Yorkers.[14] Since April of this year, Sheina has been volunteering between four and five hours each week at UOC, supporting the

---

[14] www.uonyc.org.

THE ALEPH INSTITUTE

operations of its food pantry. Sheina's work with UOC has deeply impacted her, as well as the people she serves:

> "The humanness of it all hit me deep in my soul. Mothers with young children, older men and women who struggle walking yet are smiling and grateful, the local workers down the block who cannot make ends meet. All are children of God, one day at a time. So glad to be able to bring a smile to someone's face."

She explains that she feels "blessed being able to be of assistance to others."

Sheina has described her experiences with two individuals at UOC that have been especially transformative. Victoria's son and grandson recently moved to Kentucky, and she remains all alone in New York City. Victoria was having surgery without her family near her for support, and Sheina writes, "what a brave woman . . . life is not easy and it is lonely for many. I think about how she must feel without her children now that he moved to Kentucky . . . I hope I can give her some comfort." Sheina's experiences with Tawan, a transgender volunteer, also deeply impacted her. She writes, "I shared [with Tawan] my own journey with my daughter who ultimately realized she is not trans . . . I gave Tawan my number. I thank [God] when I can help a fellow human on their journey."

Sheina's efforts are deeply appreciated by UOC. Luisa Lopez, MSW, Director of Social Services at UOC, writes that Sheina's "presence, positive attitude, and willingness to go the extra mile" have "truly set [her] apart."[15] Ms. Lopez points out Sheina's "selflessness and commitment," and her "ability to connect with our guests, treat them with dignity, and offer not only nourishment but also a sense of hope and compassion." Ms. Lopez also describes the connection that Sheina has made with her follow volunteer, Tawan, as Tawan undergoes her gender transition.

Sheina has committed to volunteering with UOC for five hours each week during the coming year.

ii.  HousingPlus Solutions

Since 2002, HousingPlus has been providing community-based housing and comprehensive services to women, including women with children, to support them in overcoming poverty, homelessness, addiction, trauma, and the effects of

---

[15] Letter from Luisa Lopez, MSW, Director of Social Services, Urban Outreach Center of NYC.

incarceration.[16] Today, HousingPlus houses approximately 176 families and single women across eight programs in Brooklyn, Queens, and Staten Island. Sheina began volunteering with HousingPlus in March of this year, preparing a curriculum and teaching classes on self-reliance and independence. Sheina has committed to volunteering with HousingPlus for at least five hours each week during the coming year.

### b.      Spiritual Counseling: Crime and Consequences Class

As part of her program of rehabilitation, Sheina has been attending my weekly class entitled Crime and Consequences. Crime and Consequences explores 3,000 years of Jewish history and wisdom addressing criminal conduct, sentencing, deterrence, and rehabilitation. The course is designed to challenge participants by applying Talmudic principles to modern-day cases, thus getting to the heart of critical questions surrounding individual, community, and societal goals in punishment and sentencing.

Through the course, I attempt to help participants discover and recover the straight paths from which they have veered. This involves encouraging heartfelt discussion about how to avoid gray areas or practices that seem even remotely unethical. Crime and Consequences examines the extensive and systematic program of repentance laid out in the Talmud and considers the insights this process holds for present-day criminal rehabilitation. The course and conversation are heavily focused on individual remorse, introspection, and a commitment to growth and transformation. I have been very encouraged by Sheina's progress so far, and I look forward to her continued, thoughtful participation in the class.

### c.      Psychotherapy

Sheina has received psychotherapy (and has been prescribed medication) at various times throughout her life to treat her mental health issues, including those relating to the abuse she has suffered. She will continue to receive regular psychotherapy as part of her program of personal growth and healing.

### d.      Marriage and Family Therapy

Sheina and her husband, Mendel, have been receiving therapy sessions from Rabbi Kass, MA, RSW, RMFT.[17] Rabbi Kass, a marriage therapist for 34 years, encourages communication and interaction to ensure healthy, happy, and long-lasting

---

[16] www.housingplusnyc.org.
[17] www.rabbikass.com.

11



relationships. ███████████████████████████████████████
█████████████ and to learn to communicate as true partners who hold each other accountable. Together they will work on rebuilding a life of integrity, honesty, and harmony. As part of our proposal, Sheina and Mendel will continue to receive marriage and family.

    e. <u>Alternative proposal:  Home Detention</u>

In the event your Honor feels that the circumstances of Sheina's case necessitate a more restrictive component, we respectfully propose a sentence to include a 12-month period of home detention. Home detention is extremely restrictive, and importantly, with the Court's permission, Sheina would be able to concurrently perform the volunteer community service and receive the treatment described above. A period of home detention (in lieu of incarceration) would also allow Sheina to continue to care for her family, including her elderly parents.

   3. <u>Application of Sentencing Factors</u>

    a. <u>Retribution</u>

Sheina has already experienced tremendous pain as a result of her actions. Moreover, under our proposal, Sheina will continue to have requirements placed on her in the form of either probation or home detention and community service obligations.

While not a formal element of our proposal, as previously discussed, it cannot be denied that Sheina has already experienced tremendous shame and humiliation as a result of her arrest and conviction. Maimonides and Jewish Law both emphasize that shame can occasionally serve as a substitute for standard punitive and deterrent elements. Shame suffered by an individual should not be undervalued or underappreciated.

    b. <u>Deterrence</u>

A period of probation (or, alternatively, home detention) and community service, and her continued participation in psychotherapy and spiritual counseling, will serve to deter Sheina from engaging in any future misconduct. Further, whereas a prison sentence often fails to provide adequate deterrence, shame succeeds. Shame is a powerful reason that non-custodial sentences can be effective in deterring criminal conduct and, for the reasons discussed above, Sheina's shame is acute.

THE ALEPH INSTITUTE

c.      Incapacitation

A period of probation (or, alternatively, home detention) would place significant restrictions upon Sheina's freedom and mobility. Further, Sheina has never been in trouble with the law before. She understands the damage she caused by her actions. Therefore, it is highly unlikely that she will reoffend.

d.      Rehabilitation

Our proposal is specifically tailored to address the rehabilitative goal of sentencing. As many scholars, the Supreme Court, and the Rabbis at Aleph have all observed, prison is often not conducive to "promoting correction and rehabilitation."[18] This is because rehabilitation is a "forward-looking" concept, promoting resocialization by emphasizing "personal reform over punishment" and "illuminat[ing] the criminal's inner struggle,"[19] and as such only works when combined with an intense personal commitment to change. Perhaps understandably, though imprisonment may satisfy a thirst for retribution, the prison environment rarely inspires this commitment in the incarcerated individual. As Judge Richard Lowell Nygard once observed, "people – offenders included – change because they see something in themselves they do not like, and they reach down inside themselves and change it. Most criminal offenders who change for the better do so in spite of prison not because of it."[20]

Whereas prison may not promote rehabilitation, community-based programs like Aleph's proposal are often effective at restoring an individual's commitment to ethical behavior. The same characteristics that have made Sheina such a source of strength for her own family and community will ensure that her efforts have a strong positive impact for those with whom she interacts under the terms of this proposal. In addition, Sheina's program of rehabilitation will include community support and reinforcement. We believe that Sheina will be able to rehabilitate herself through these efforts, and that, in the process, she will push others to reach their full potential.

---

[18] *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011)*; see also* Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 460 (2016).
[19] Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 458-60 (2016).
[20] Richard Lowell Nygaard, *Crime, Pain, and Punishment: A Skeptic's View*, 102 Dick. L. Rev. 355, 362-63 (1998).

13



### III.    <u>CONCLUSION</u>

Sheina is painfully aware that her actions were terribly wrong, and she longs to make amends. She has learned a tremendous amount about herself since her conduct, and she accepts responsibility for her actions. She is an asset to her family, her friends, and her community, and there are so many people who would suffer in her absence.

Whereas prison may not promote rehabilitation, community-based programs like Aleph's proposal are often effective at restoring an individual's commitment to ethical behavior. We believe that Sheina will be able to rehabilitate herself through these efforts, and that, in the process, she will push others to reach their full potential.

With the utmost respect and admiration for Your Honor's wise and compassionate decisions, I hope and pray that this submission will receive the consideration that will produce satisfactory results for society and for Sheina.

With gratitude and prayerful wishes for all good.


Respectfully submitted,

/s/ Yossi Bryski

Rabbi Yossi Bryski
Director of Alternative Sentencing
The Aleph Institute

14

**APPENDIX:**

**THE ALEPH INSTITUTE**

**INTRODUCTION AND HISTORY**

The Aleph Institute ("Aleph") is a 501(c)(3) non-profit organization committed to improving our criminal justice system so that it delivers sensible and fair justice for all stakeholders, and improves conditions of confinement and re-entry programs for those imprisoned. It assists the families of individuals facing punishment or serving sentences to deal with the many, often devastating collateral consequences of prosecution and imprisonment of a loved one, and supports members of the armed forces. Aleph's prevention program offers an array of educational opportunities designed to cultivate greater adherence to the law. By addressing the root causes of unlawful behavior, Aleph aims to inspire current and emerging generations to strive for higher standards, ethically and legally, and thus prevent collateral consequences before they even occur. Aleph also promotes the more widespread use of alternatives to incarceration in appropriate cases. Aleph supports individuals and families regardless of their religion or ethnicity, and provides all its services *pro bono*.

Aleph was created 42 years ago during a meeting between the late Honorable Jack Weinstein, U.S. District Judge for the Eastern District of New York, and Rabbi Sholom Lipskar, in Judge Weinstein's chambers. Rabbi Lipskar was inspired by The Lubavitcher Rebbe, Rabbi Menachem M. Schneerson, to create an organization that would work to change the sterile and often dehumanizing environment of prisons into environments of restoration, rehabilitation, and reformation. Similarly, Judge Weinstein understood that every person involved in the criminal justice system needs to be treated as an individual, a person, and not just a statistic.

Utilizing a spiritual focus, together with practical life skills and counseling, Aleph seeks to help individuals to recalibrate their lives, preparing them for effective reentry into society. Aleph's efforts during the past 42 years have served thousands of incarcerated individuals and their families, culminating in the reinforcement of strong family ties, and helping to facilitate a more successful transition back into the community. In Judge Weinstein's words, "[T]he Aleph Institute…understands and forces us to face the fact that each person deserves to be treated with respect as an individual personality and not as…a faceless number."[1]

Aleph has worked cooperatively and productively over the years with hundreds of current and former federal and state judges, prosecutors, probation officers, prison officials, and members of Congress from across the country – including former Attorneys General and Deputy Attorneys General, Bureau of Prisons directors, U.S. Attorneys, District Attorneys, and others. Aleph played an instrumental role in securing passage of the First Step Act of 2018, which brought about much-needed reforms to the federal criminal punishment system. Aleph has become a leading, credible voice in the ever-growing movement toward criminal justice reform

---

[1] Jack B. Weinstein, *Prison Need Not Be Mandatory: There Are Options Under the New U.S. Sentencing Guidelines*, 1 Judge J. 16, 28 (1989).

## ALEPH'S WORK IN ALTERNATIVE SENTENCING

### The Benefits of Alternatives to Incarceration

The historical approach to sentencing, which uses incarceration as the default remedy for criminal conduct, has staggeringly high economic and societal costs. The United States spends nearly $300 billion annually to police communities and incarcerate 2.2 million people.[2] The societal costs of incarceration – lost earnings, adverse health effects, and the damage to the families of the incarcerated – are estimated at up to three times the direct costs, bringing the total burden of our criminal justice system to roughly $1.2 trillion each year.[3]  Whenever a court sentences an individual, it is not a stretch to say that it sentences an entire family, and the children of incarcerated individuals will suffer a permanent scar. Specifically, research shows that children of incarcerated parents demonstrate maladaptive symptoms, including behavioral problems, difficulties at school, depression, and an increased risk of winding up in prison themselves.[4]

Our many years of experience have taught us that, in certain cases, the goals of the criminal justice system can be accomplished by measures other than incarceration. The historic mindset that incarceration should be the default approach to malfeasance is failing both society and the individual. The weight of the evidence suggests little or no correlation between longer prison sentences (more than ten years) and reduced recidivism; indeed, the National Institute of Justice has concluded that "long prison sentences do little to deter people from committing future crimes."[5] In fact, longer sentences may slightly *increase* recidivism when compared to shorter sentences.[6] The imposition of long sentences on a large scale "offers diminishing returns for public safety."[7]

Aleph has developed the view that custodial sentences should be reserved for individuals who have a history of violence, as well as for those individuals (including certain nonviolent offenders) who may otherwise pose a danger to society if allowed to remain at liberty. Rather than being strictly

---

[2] https://www.bjs.gov/index.cfm?ty=pbdetail&iid=6728, Table 1.

[3] https://joinnia.com/wp-content/uploads/2017/02/The-Economic-Burden-of-Incarceration-in-the-US-2016.pdf.

[4] https://www.publichealthpost.org/research/incarcerations-costs-for-families/

[5] William Fitzpatrick, a former President of the National District Attorneys' Association, April 26, 2016 letter to Senators Mitch McConnell and Harry Reid. *See also* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & JUST. 199, 201 (2013) ("There is little evidence that increases in the length of already long prison sentences yield general deterrent effects that are sufficiently large to justify their social and economic costs.")

[6] Roger Pryzybylski, John Maki, Stephanie Kennedy, Aaron Rosenthal and Ernesto Lopez, *The Impact of Long Sentences on Public Safety: a Complex Relationship* (November 2022), Council for Criminal Justice, Task Force on Long Sentences.

[7] *Id.*

2

punitive, criminal punishments should be designed to confer a benefit on the victims of the offense and society as a whole, and provide appropriate support and rehabilitative services to the defendant.[8] This sentencing philosophy is reflected in every case that Aleph accepts: Aleph's advocacy is deeply rooted in its conviction that incarceration should not be used absent a compelling need. We agree with William Fitzpatrick, the former President of the National District Attorneys' Association, who suggested that society "use prison for those we are afraid of, not those whom we are mad at based upon their behavior."[9]

## *Aleph's Approach*

Aleph is among the very few non-profit organizations in the criminal justice arena that advocates not only for systemic changes but also directly on behalf of individuals facing criminal punishment. Aleph presents, to courts and prosecutors around the country, alternatives to incarceration for defendants who are selected by Aleph through a careful screening process. Aleph's Alternative Sentencing Department generally only advocates on behalf of individuals who are first-time offenders who have not committed a crime of violence. Aleph's alternative sentencing work is focused on individuals who have expressed clear and genuine remorse and a willingness to make amends for their conduct, and/or cases where there are compelling mitigating circumstances that justify a lower sentence. Aleph does not advocate for an alternative sentence in cases where it deems the individual to be a threat to public safety.

In addition to these requirements, Aleph makes an individualized assessment of the suitability of alternative sentencing, relying heavily on its vast experience compiled over four decades. Aleph has built a strong track record of credibility and success, in which many judges have imposed lower sentences based on one or more factors identified by Aleph in its written submissions and oral allocutions at sentencings. A recent review conducted by Covington & Burling LLP found that, in cases where Aleph made sentencing recommendations, sentencing judges relied on one or more factors identified by Aleph in imposing a sentence equal to or near to Aleph's recommendation in a majority of such cases.[10]

## *Crafting an Alternative Sentencing Proposal*

Legal scholars, the United States Supreme Court, and the rabbis at Aleph have all observed that prison is often not conducive to "promoting correction and rehabilitation."[11] This is because rehabilitation is a "forward-looking" concept, promoting resocialization by emphasizing "personal

---

[8] Talmud Berachos 606b; Likutei Torah Nasso.

[9] William Fitzpatrick, a former President of the National District Attorneys' Association, April 26, 2016 letter to Senators Mitch McConnell and Harry Reid.

[10] In several cases, the sentencing judge *expressly* relied (in whole or in part) on Aleph's submission in determining the sentence.

[11] *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011)*; see also* Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 460 (2016).

reform over punishment" and "illuminat[ing] the criminal's inner struggle,"[12] and as such only works when combined with an intense personal commitment to change. Though imprisonment may satisfy a thirst for retribution, the prison environment rarely inspires this commitment in the incarcerated individual. As Judge Richard Lowell Nygard once observed, "people – offenders included – change because they see something in themselves they do not like, and they reach down inside themselves and change it. Most criminal offenders who change for the better do so in spite of prison not because of it."[13]

Whereas prison may not promote rehabilitation, community-based programs like Aleph's proposals can be effective at restoring an individual's commitment to ethical behavior. Further, the same characteristics that may have made an individual such a source of strength for their own family and community will enhance the positive impact of their efforts for those with whom they interact under the terms of Aleph's proposal. We believe that individuals may best rehabilitate themselves through these efforts and that, in the process, they will push others to reach their full potential.

Aleph's sentencing proposals are designed to mete out appropriate, substantive punishment with the greatest benefit and lowest cost to society, while redirecting and enhancing an individual's value structure through social, therapeutic, and moral counseling and education. Every proposal Aleph submits carefully considers the traditional sentencing goals (retribution, rehabilitation, incapacitation, and deterrence), as well as the unique history and personal characteristics of each defendant, in an effort to provide effective correctional solutions. We typically advocate for sentences that include an alternative, non-custodial component – for example, community service, restorative justice, psychotherapy, or spiritual counseling. The non-custodial aspect of the sentence allows individuals to directly address the shortcomings that contributed to their offense, and also gives them an opportunity to use their sentence as a means to improve themselves and the world around them.

Aleph strives to craft alternative sentences that directly address the crime that brought an individual into the criminal justice system. An individual who serves the community that he or she has wronged, and employs his or her unique strengths to support those who need help, may have a truly redemptive and rehabilitative experience. For example, where appropriate, Aleph may recommend that individuals present "deterrence talks," whereby they share their personal experiences that led to their involvement in the criminal justice system, with other members of their community. In this way, the goals of both rehabilitation and deterrence are furthered: such individuals must directly and openly confront their wrongful conduct as a component of their rehabilitation, and others may be deterred from following a similar path. Selectively administered, such alternative sentences can provide individuals with an opportunity to improve themselves and the world around them, while also keeping them with their families and in their community, thereby limiting harmful collateral consequences.

---

[12] Benjamin L. Apt, *Do We Know How To Punish?* New Crim. L. Rev. 437, 458-60 (2016).

[13] Richard Lowell Nygaard, *Crime, Pain, and Punishment: A Skeptic's View*, 102 Dick. L. Rev. 355, 362-63 (1998).

*Taking a Leadership Role*

Motivated by this sentencing philosophy, Aleph endeavors to become a resource to those seeking to promote the more widespread use of alternative sentencing in appropriate cases, as well as the broader reform of the criminal justice system. In this role as advocate for a better approach to sentencing, we work to bring together thought leaders, judges, and prosecutors to improve the sentencing framework.

Aleph has sponsored and conducted two summits on sentencing and sentencing reform – one in 2016 at the Georgetown Law Center, entitled "Alternative Sentencing Key Stakeholders," and one in 2019 at Columbia Law School, entitled "Rewriting the Sentence." Both summits were attended by hundreds of criminal justice stakeholders, including federal and state judges, federal and state prosecutors, probation officers, private practitioners, academics, and others, from across the country. The focus of both summits was on bringing about a more enlightened and humane criminal justice system, in which individuals facing punishment are treated fairly and humanely, consistent with preserving the interests of their families, communities, victims, and society as a whole.

In October 2023, the Center for Justice and Human Dignity ("CJHD") (a 501(c)(3) non-profit organization that was incubated at and is supported by Aleph) will host another summit at George Washington University School of Law in Washington, DC, entitled "Rewriting the Sentence II Summit on Alternatives to Incarceration." This summit, which will build off Aleph's two prior summits, will serve as a dedicated forum where judges, prosecutors, and other decision-makers can come together to confront the complex challenges in addressing mass incarceration and its harmful consequences, including through the adoption of alternative sentencing programs and a reimagined approach to criminal justice. Together with CJHD, Aleph is also actively developing the Forum for Alternatives to Incarceration Resources, an online resource designed to provide a wealth of information and resources regarding alternative sentencing practices and implementation strategies throughout the United States.

## SUPPORTIVE STATEMENTS ABOUT ALEPH

Aleph has been publicly recognized numerous times for its outstanding contributions to improving the criminal justice system. The following is a selection of supportive statements about Aleph.

"The Aleph Institute is doing extraordinary fine work. Aleph helps in three ways. First, it explains to judges and the judicial system when and how alternatives to prison which protect the public are possible. Second, it helps those in prison develop their spiritual lives and maintain contact with their families and the world beyond their bars and barbed wire. Third, it assists those on the outside, particularly the children of prisoners, to retain their ties with prisoners. As a result of its good work, Aleph is widely known and respected by penal and judicial authorities."

—**The Late Hon. Jack B. Weinstein,** Former Chief Judge of the U.S. District Court, Eastern District of New York.[14]

"For over 35 years Aleph has been championing and delivering justice to people who have been overlooked or forgotten by the rule of law, giving them hope, relief from suffering and the chance to improve their lives and fortunes. Both these individuals and the nation are the beneficiaries of Aleph's goodness and mission."

— **Hon. Louis Freeh,** former U.S. District Judge, Southern District of New York, and former Director of the FBI, [at Aleph's 2016 ASKS Summit, Georgetown University Law Center.]

"While judging, in general, requires the application of law to the facts, sentencing requires more. It necessarily involves empathy and compassion, which Aleph surely brings to the table. At a time when sentencing principles are changing, Aleph's input is invaluable. It provides careful analysis of alternatives to incarceration entirely consistent with – and some may say better suited to – public safety. It provides a critical link between prisoners and their families and friends, making certain that prisoners – human beings – do not disappear behind the walls. Put simply, Aleph brings to bear its reservoirs of compassion and empathy, both before during and after punishment has been imposed, and has been doing so for 35 years."

—**Hon. Nancy Gertner,** former U.S. District Judge, District of Massachusetts; Professor at Harvard Law School, [at Aleph's 2016 ASKS Summit, Georgetown University Law Center.]

"I think we are all in agreement this has been an extraordinary summit….35 years ago, a young Rabbi started some educational institutions, believing… that education was a fundamental right and goal of all people. He also had an interest—because of faith, belief and experience—that reforms could be made in the criminal justice system; to deal with defendants more humanely, to be aware of the impact on families, [and] the problem of reentry, and he started an institution to deal with these problems. Today we are the beneficiaries of that vision and that work."

—**The Late Hon. Charles B. Renfrew,** U.S. Deputy Attorney General and U.S. District Judge, Northern District of California, [at Aleph's 2016 ASKS Summit, Georgetown University Law Center.]

"The Aleph Institute must be commended for its vision in bringing together at the ASKS Summit such diverse and interesting people and perspectives on the questions of criminal justice reform and sentencing alternatives in this era of mass incarceration."

—**Hon. Judge Brooke Wells,** U.S. Magistrate Judge, District of Utah, at Aleph's 2016 ASKS Summit, Georgetown University Law Center.

---

[14] *Supra*, note 1.

"You at Aleph are doing extraordinary things on behalf of the judges in my court. We appreciate the work that you do."

> —**Hon. Joy Flowers Conti,** Senior U.S. District Judge, Western District of Pennsylvania.

"Today judges and lawyers, prosecutors and law enforcement communities…are engaged in trying to make certain that our system is fair. It takes a collaborative partnership and that's why I am so glad that all of us are here committed to making certain our justice system is the best that it can be. And I thank [Aleph] for being here. And I thank you for your continued great work."

> —**Hon. Bernice Donald,** former U.S. Circuit Judge for the Sixth Circuit.

"The many problems in our system cannot be addressed by simply building more prison beds. One of the keys of an effective Department of Corrections will be…great emphasis on alternatives to incarceration. Organizations such as the Aleph Institute will be key to any community-based programs."

> —**The Late Hon. Lawton Chiles,** former Governor, Florida.

"[Criminal Justice reform] is hard work and even if we do it thoughtfully, and with the openness and humanity it requires, there will inevitably be setbacks and disappointments…But it is work that draws its sustenance from the divine spark in each of us. I commend Aleph for its decades of commitment, and for convening such an impressive group of people and organizations."

> —**Hon. Jeremy Fogel,** former U.S. District Judge, Northern District of California, and former Director of the Federal Judicial Center, at Aleph's 2019 Rewriting the Sentence Summit, Columbia University Law School.

"Over the years, I have worked pro-bono on a number of matters with the Aleph Institute. The Institute's staff are incredibly dedicated, caring, smart, and hardworking. The Institute provides invaluable assistance to people from all walks of life and helps them find the justice they deserve with the compassion they need."

> —**Larry Thompson,** former U.S. Deputy Attorney General and former U.S. Attorney, Northern District of Georgia.