

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One St. Andrews Plaza*
*New York, New York 10007*

September 13, 2023

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   United States v. Sheina Levin, S2 21 Cr. 221 (SHS)

Dear Judge Stein:

The Government respectfully submits this letter regarding Sheina Levin's sentencing, which is scheduled for 2:30 p.m. on Wednesday, September 27, 2023. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") recommend a sentencing range of 30 to 37 months' imprisonment. For the reasons discussed below, the Government respectfully submits that a below-Guidelines sentence of probation that includes a term of home confinement would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

I.   **Offense Conduct**

Levin participated in a corrupt kickback scheme with Victor Rivera, the President and Chief Executive Officer ("CEO") of Bronx Parent Housing Network ("BPHN"), a non-profit housing and social services organization that operated soup kitchens, homeless shelters, and affordable-housing facilities in New York City. BPHN annually spent millions of dollars in public funds on real estate, security, cleaning, construction, and food expenses, among other costs related to services BPHN provided. (PSR ¶¶ 10, 16).

Levin owned and operated a real-estate business, Urban Residences, that subleased a property to BPHN at 473 East 173rd Street in the Bronx. (PSR ¶ 16). BPHN used the property for a shelter. (PSR ¶ 16). From May 2019 to January 2021, Levin paid Rivera $838,880.78 in kickbacks drawn from BPHN's sublease payments. (PSR ¶ 16). After receiving rent payments from BPHN, which received much of its funding from the City of New York, Levin regularly paid kickbacks to Rivera in the form of checks to TLV Consultants, a purported consulting

company nominally owned by one of Rivera's relatives but controlled, as Levin knew, by Rivera. (PSR ¶¶ 12, 16). At times, Levin indicated on checks that the payments related to "Consultation" provided by TLV. (PSR ¶ 16). In fact, though, the payments were kickbacks for Rivera, who used much of the money for personal expenses, including to pay the mortgage on his personal residence. (PSR ¶ 16).

Rivera had similar corrupt arrangements—not involving Levin—with other BPHN contractors over the years. (PSR ¶¶ 11-15, 17).

## II.     Procedural History, Guilty Plea, and Guidelines Calculation

On February 7, 2022, Rivera pleaded guilty to one count of conspiracy to commit honest services wire fraud, as charged in Information 21 Cr. 221 (SHS). (PSR ¶ 5). On May 23, 2022, this Court sentenced him to a term of 27 months' imprisonment, to be followed by two years' supervised release. The Court also ordered Rivera to forfeit $1,249,158.93 and to pay $902,269.23 in restitution to BPHN. (Dkt. 43; PSR ¶¶ 5, 17-18).

On March 9, 2023, Levin surrendered voluntarily for arrest and consented to the filing of Information S2 21 Cr. 221 (SHS) (the "Information"), which charged her in one count with conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349. That same day, Levin pleaded guilty, pursuant to a written plea agreement with the Government, to Count One of the Information. (PSR ¶¶ 1, 3).

In the plea agreement, the parties stipulated that the applicable Guidelines offense level is 19, based on a base offense level of 8 under U.S.S.G. § 2B4.1(a), a 14-level increase under U.S.S.G. § 2B1.1(b)(1)(H) because the value of the improper benefits conferred exceeded $550,000 but did not exceed $1,500,000, and a 3-level reduction under U.S.S.G. § 3E1.1(a)-(b) for Levin's acceptance of responsibility. (PSR ¶¶ 4(1)-(5)). The parties further stipulated that Levin's Criminal History Category is I because she has zero criminal history points, and, accordingly, that the Guidelines range of imprisonment is 30 to 37 months. (PSR ¶¶ 4(6)-(7)).[1]

Levin agreed under the plea agreement to a forfeiture money judgment in the amount of $790,835.06, the sum of the kickbacks Levin paid or attempted to pay to Rivera, minus a portion of the payments that were made in cash and already seized by the Government. Rivera is jointly and severally liable with Levin for $689,893.35 of the forfeiture amount. (PSR ¶ 4(11); Dkt. 60).

---

[1] If it were in effect, Section 4C1.1 of the November 2023 version of the Guidelines would award Levin an additional two-level offense-level reduction based on her lack of criminal history and the absence of enumerated aggravating factors. That would yield a total offense level of 17 and a recommended Guidelines range of 24 to 30 months' imprisonment. Because Section 4C1.1 has not taken effect, the applicable Guidelines range remains 30 to 37 months' imprisonment. But the Government consents to having the Court sentence Levin as though the applicable range were 24 to 30 months in prison, provided Levin agrees to waive any future motion for a sentence reduction based on Section 4C1.1 of the November 2023 or any later version of the Guidelines.

In addition, Levin agreed to pay restitution to the victim of her offense, BPHN, in the amount of $838,880.78, representing the total bribes and kickbacks she paid Rivera. Rivera is jointly and severally liable for that entire amount. (PSR ¶¶ 4(10), 4(12), 24).

In the Presentence Report, the United States Probation Office concurs with the parties' Guidelines (PSR ¶¶ 28-41, 72), forfeiture (PSR ¶ 84), and restitution (PSR ¶ 82) calculations, and recommends that the Court sentence Levin principally to 12 months in prison (PSR at 31).

### III. Applicable Law

The Guidelines provide the "starting point and the initial benchmark" in sentencing proceedings. *Gall v. United States*, 552 U.S. 38, 49 (2007). After calculating the Guidelines, the Court must consider the factors outlined in 18 U.S.C. § 3553(a). *Id.* at 49-50 & n.6. Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, namely, the need (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (b) "to afford adequate deterrence to criminal conduct," (c) "to protect the public from further crimes of the defendant," and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7).

### IV. Discussion

A below-Guidelines sentence or probation that includes a term of home confinement is warranted in this case based on the sentencing factors the Court must consider.

Levin committed an undeniably serious crime. She knew that Rivera had a duty to act in BPHN's best interests, and she helped him violate that duty when she kicked back hundreds of thousands of dollars in rent payments that her company received from BPHN. That corrupt arrangement not only deprived BPHN of its right to Rivera's honest services, but also undermined public trust in how New York City administers essential services to its poorest residents. Levin knew her conduct was wrong, which explains why she tried to conceal the arrangement by falsely representing that some kickback payments were "Consultation" fees owed to TLV. (PSR ¶ 16). Levin's sentencing submission states that despite the kickback scheme, BPHN paid Urban Residences a "fair market value" sublease amount. (Def. Sent. Ltr. 4). Whether or not that is so, however, Levin deprived BPHN of its valuable funds when she corruptly routed BPHN's money back to Rivera. Plainly, BPHN could have used the $838,880.78 Levin paid Rivera to fund additional and better services for the neediest New Yorkers. The nature and circumstances of the offense and the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment all weigh in favor of a sentence that includes a restriction on Levin's liberty.

The need for general deterrence, although present in all cases, is also heightened here because corruption has plagued New York City's efforts to administer services to the homeless. *See, e.g.*, Amy Julia Harris, SHELTER OPERATOR CITED FOR NEPOTISM STILL GETS MILLIONS IN CITY FUNDS, N.Y. Times, Feb. 28, 2022;[2] Andy Newman, SHE RAN A BRONX HOMELESS SHELTER. HERE'S WHAT SHE SPENT MILLIONS ON, N.Y. Times, Nov. 23, 2021;[3] Nikita Stewart, $500 MILLION FOR THE HOMELESS TARGETED IN SCHEME WITH BOGUS ADDRESSES, N.Y. Times, Jan. 29, 2020.[4]

But several mitigating factors weigh heavily in favor of a sentence far below the prison term recommended by the Guidelines.

*First*, Levin fully and promptly took responsibility for her criminal conduct not only by pleading guilty, but by waiving indictment and discovery before doing so. Her voluntary waiver of her rights to indictment by grand jury and to discovery of the Government's evidence spared public resources and reflected a genuine acceptance of responsibility beyond what is required to earn acceptance-of-responsibility credit under the Guidelines.

*Second*, Levin made sincere efforts to cooperate with the Government's investigation of Rivera and others. She participated voluntarily in a proffer session and provided what the Government believes was truthful information about herself and others. Ultimately, the Government did not pursue a cooperation agreement with Levin because it did not need her assistance to build its case. Therefore, the Government is not moving for a departure under Section 5K1.1 of the Guidelines. But the Court is entitled to consider Levin's efforts toward cooperation in its assessment of the 18 U.S.C. § 3553(a) sentencing factors it must consider.

*Third*, by arranging before sentencing to place restitution funds in escrow (*see* Def. Sent. Ltr. 22-23, 25, 32), Levin has taken significant steps toward repaying BPHN for the $838,880.78 loss it sustained.[5] To be sure, restitution is mandatory and compensatory; it is not a substitute for punitive components of a criminal sentence. But Levin's efforts to facilitate the restitution-payment process are commendable, and it is notable that Levin, rather than the more-culpable Rivera, will shoulder the burden of paying the restitution for which the co-conspirators are jointly and severally liable.

---

[2] The article is available at https://www.nytimes.com/2022/02/28/nyregion/african-american-planning-commission-nepotism.html (last visited September 11, 2023).
[3] The article is available at https://www.nytimes.com/2021/11/23/nyregion/ethel-denise-perry-millennium-care-fraud.html (last visited September 11, 2023).

[4] The article is available at https://www.nytimes.com/2020/01/29/nyregion/homeless-shelters-services-fraud.html (last visited September 11, 2023).

[5] Given the escrow arrangements, the restitution should be paid promptly after sentencing, and not, as the Probation Office recommends in the Presentence Report (PSR at 34), in monthly installments.

### V.    Conclusion

The Government respectfully submits that a sentence of probation that includes a period of home confinement would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:     /s/
David Abramowicz / Tara La Morte
Assistant United States Attorneys
Southern District of New York
(212) 637-6525 / 1041

cc:     Defense counsel (by ECF)